Robert Jacobsen
614 Canon Dr
Kensington, CA 94708
925-890-8619
rejacobsen2@gmail.com
Defendant in Pro Per

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff v.<br><br>ROBERT JACOBSEN<br><br>Defendant | Case No. CR 15-518 MMC<br><br>MOTION TO REVERSE PLEA AGREEMENT<br><br>AND SET ASIDE INDICTMENT<br><br>DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL<br><br>Date:            Time: |

INTRODUCTION

This motion is a request of the Court to reverse the plea agreement agreed to by this Defendant on July 19, 2017 as well as to reverse the indictment from the Grand Jury based on intentional false testimony of material facts.   The reversal of the plea agreement is based on multiple examples of ineffective assistance of counsel.

BACKGROUND

For a number of years I had been helping people to fight to keep their homes during the economic downturn that led to so many foreclosures.  Much of this involved lawsuits against lenders.  January 19, 2012 I met attorney Michael Yesk (Yesk) who specialized in litigation

against lenders for wrongful foreclosure.  March of 2012 Yesk told me about a lender that shows as "lender" on deeds of trust called "American Brokers Conduit, a New York corporation", (ABC).  Looking into ABC Yesk had discovered that there has never been a corporation called ABC which would lead to the conclusion that there was no valid lender on a note or deed of trust showing that name as lender.  Attached here as **Exhibit 1** is a statement from the New York Department of State confirming that there has <u>never</u> been a corporation registered in the name of ABC.  Since all parties to a contract must be identifiable per California law CCC1558 as well as tax law and corporate law, all telling us the deed of trust (and note) would be void *ab initio,* not voidable.  I started looking for homes with deeds of trust showing ABC that was in foreclosure.  Maybe we could help the homeowner.  While I was looking for an hoe with an ABC loan another lender was discovered "Direct Funding, a California corporation" that also had never existed in the California Secretary of State's database.  This was found on a deed of trust on a home owned by Virgin Properties, LLC (Virgin), a Victor Gess (Gess) company, located at 1040 Pine Lane, Lafayette, CA.   Yesk filed a lawsuit to confirm that the deed of trust was void.  The Court agreed and ruled the deed of trust void *ab initio* which established that Yesk's legal theory about the deed of trust being void was good legal theory.  See **Exhibit 2** for copy of judgment (only showing page one of deed of trust).

Another suit was filed against ABC on a house located in Concord, CA on 3928 Bayview Cir, Concord, CA.  (Mathesen and Virgin Properties v ABC.  See **Exhibit 3** for copy of complaint.  Virgin Properties, LLC, using Yesk, filed this suit also.  Gess was advised by Yesk to form a new New York corporation called American Brokers Conduit to keep anyone else from forming a corporation by that name then coming forward to claim they were the

lender on the deed of trust (called corporate blocking).  Please take notice of Exhibit B in this complaint showing the New York Department of State statement saying there was no corporation ever registered by the name of ABC.

Gess formed a new entity in NY called American Brokers Conduit Corporation (ABCC).  A slightly different name, but close enough to keep anyone from reserving a new corporation in that name.  Gess and I realized the name of ABCC would also be perfect for a web based search site to assist mortgage brokers find matching lenders for difficult loans to place.  It was out plan to develop this website together along with Patric Todd in New York.

This Mathesen / ABC suit was lost because the servicer/lender went ahead to foreclosure.  The right for a lender to foreclose is found in the deed of trust.  Yesk argued that the lender/servicer did not have standing to foreclose because the deed of trust was void.  Yesk discovered that standing is not a valid argument when it is against the defendant.  The case was lost.  Yesk felt it was a bad decision but respected the Court's decision.

Another house was found by me at 225 Verde Mesa Dr, Danville.  The house was about to go to foreclosure sale and the owner (Bill Williams) did not want to keep his house.  He didn't want to get involved in a lawsuit or pay for litigation.  He was offered that he could sell the house subject to the valid existing debt (the ABC loan), the new owner would file a suit to void the deed of trust then pay Bill Williams, $55,000 assuming the suit was successful and someone bought the house.

Clarice Batiste of CB Equities was interested in buying the house, suing ABC then reselling the house to make a nice profit and pay the prior owner his $55,000.  She hired attorney Nikhil Bhatnagar (Bhatnagar) who was a contract attorney under Yesk.  Bhatnagar, being aware of the unsuccessful suit against ABC decided to file the suit against ABC but serve

the only New York corporation with that name, ABCC. Gess got the suit served on ABCC and asked me to assist in making it go away as quickly as possible. Yesk paralegal Rod Ciferri (Ciferri) drafted a stipulation per Bhatnagar's instructions. The stipulation stated that ABCC had never loaned any money on the Verde Mesa house and didn't object to a removal of the deed of trust from the property. See **Exhibit 4** showing stipulation. A truthful statement by ABCC saying they had never loaned money on this deed of trust. ABCC hired an attorney that had ben considered to work at Yesk Law but wasn't hired, Alla Barbalat. The stipulation was filed which led to a stipulated judgment voiding the deed of trust. The judgment voiding the deed of trust was immediately sent to the foreclosure trustee doing the foreclosure on the Verde Mesa house. The foreclosure trustee would then cancel the foreclosure and as an agent for the lender, would forward the judgment to whoever that was. Sometimes the entity that owns a note and deed of trust is very challenging to identify. This procedure was to flush out the entity that claimed to own the void deed of trust. It was expected that entity that claimed to own the void note and deed of trust would file a new suit to reverse the stipulated judgment. That would make the note owner the plaintiff. Now, according to Bhatnagar, he could object due to lack of standing. That was the plan. The attorneys referred to this as a "work around".

After about a year nothing was heard from whoever would be claiming to own the deed of trust. It was concluded by all of the Yesk and Bhatnagar that they figured out the deed of trust was void because of the lack of it stating a valid lender, then concluding there was no hope of reversing the judgment.

Two other houses were located with all the same story and almost carbon copy lawsuit. The owners didn't want to sue the lender, didn't have money, but would be interested in getting a fee to allow someone else to sue, get a judgment voiding the deed of trust, followed by the

sale of the house now that the void deed of trust was removed.  The next one was in Monterey on 11718 Saddle Rd followed by 1611 Broadrick St, San Francisco.  Bhatnagar copied the old complaints and stipulations which led to a stipulated judgment, just the same.  The Monterey house was purchased from the owner in foreclosure (Eckersley) by EquitecWest, LLC.  The San Francisco house was purchased by Michael O'Brien's company called Bay Ridge Properties.  The Monterey house was never re-sold but Bank of New York Mellon did file a new suit to reverse the stipulated judgment.  For the San Francisco house, Wells Fargo filed a motion to intervene. Bhatnagar never objected or replied in any way leading to them intervening.  Finally Deutsch Bank came around and filed their suit to reverse the stipulated judgment on the Danville house.  These suits, to the best of my knowledge, remain unresolved as this writing.

They should all lose because ABC is an unidentifiable entity meaning the deed of trust is void *ab initio* which means the entity that says they own the deed of trust in fact owns a void deed of trust.  The stipulated judgments only voided the deed of trust, not the note, so I suppose they could try to collect on the note, but, they won't be successful because the note also is void for the same reasons.  I was told by the attorneys that their only recourse is to demand their money back from the purchase of the void note and deed of trust.  It's sort of a puzzle who they might have paid to buy this worthless asset.  It couldn't have been ABC because as a non-entity they could not have opened a bank account.  I'm sure there will be more to this story with time.

The bottom line is the deed of trust is void, was always void and has no force and effect to act as a security instrument for a note somewhere.  The owner of the house never borrowed any money from anyone on the house, but the house came with a deed of trust that is invalid (void) and should be removed, as it is a cloud on the title.  (per the attorneys).

I referred the two house deals to Clarice Batiste and Michael O'Brien with the understanding I would lead them through the process to teach them how to do these suits to make money. For this they would pay me a sizable referral fee.  After their first house they could do others with no referral fee.  This is the money that is claimed I did money laundering and wire fraud for the money being transferred through the wires.  **Exhibit 5** shows the San Francisco house lawsuit.  **Exhibit 6** shows the stipulation.  **Exhibit 7** shows the judgment.

Critical to these transactions and lawsuits was the fact that ABC had never existed making the deed of trust recorded on property void.

GRAND JURY

November 5, 2015 the Grand Jury convened to determine if an indictment was justified for money laundering and wire fraud relating to the Danville and San Francisco lawsuits discussed above.  The FBI and IRS had been conducting their research into this potential criminal case for approaching two years.  They had researched every corporate entity related to the three lawsuits as well as companies owned by myself.  For the companies that were the plaintiffs in the three lawsuits, they contacted and talked to the owners related to the Danville and San Francisco houses.  The FBI and IRS researched ABCC and had contacted Victor Gess, the owner.   Just as a note, to look up ABCC (American Brokers Conduit Corporation) in New Yorks records in order to find Victor Gess' name, the FBI and IRS would have, by the same action, seen there was no corporation by the name of ABC, the first three words being identical.  They both would have come up in the same search, but of course only ABCC was a valid, registered corporation, so it was the only one that came up.   They had contacted all the attorneys related to the lawsuits that are subject

of this case.  In talking to attorney Michael Yesk of Yesk Law, David Strange and Julie Ryer were in Mr. Yesk's office and were told about the fact that ABC had never existed making any contract bearing that name a void document.  Michael Yesk told Strange and Ryer about of the first lawsuit done by Yesk (Matheson and Virgin Properties v ABC Concord house) which has a copy of the New York Department of State statement that ABC had never existed in their records shown as Exhibit B, the same as Exhibit 1 and Exhibit B in **Exhibit 3** in this motion.  Yesk may have given them a copy also.

Strange talked to Stephen Siproth, Deputy County Counsel for Contra Costa County.  In the 302 narrative (evidence page FBI-000165), Strange writes in the second paragraph, last sentence "The actual defendant named was listed as "ABC", a New York Corporation, but Siproth could not find any supporting documentation to show that this corporation actually existed."  Then Strange writes on page FBI-000166, top of the page of same document "Siproth said that American Brokers Conduit Corporation could not be the same as American Brokers Conduit as American Brokers Conduit was not a corporation."  See **Exhibit 8** for a copy of the Siproth FBI 302

The above two paragraphs should leave no doubt that Strange knew there was no New York corporation called American Brokers Conduit.  When Siproth told Strange there was no corporation called ABC then the first thing he would have done when he got back to the office would be to look it up himself if he hadn't already.

All of this happened before the Grand Jury hearing.  Strange and Ryer absolutely knew ABC had never existed as a New York corporation.  It is not possible that they could not have known this.  After the conversations with Yesk, they also knew the theory and law

behind all contracts, including deeds of trusts and notes, bearing ABC as a party, would be void.

**ABC bankruptcy**:, At the time of the first ABC lawsuit, attorney Michael Yesk was told by someone that there had been an ABC as a dba of American Home Mortgage Corp. (AHMC) and that AHMC had filed bankruptcy.  Michael Yesk went to PACER and looked up the AHMC bankruptcy, then did a word search for "Conduit" and found nothing.  Checking schedules for assets held by AHMC also found nothing for ABC.  See **Exhibit 10**.  A check of Suffolk County records, where the ABC entity was supposedly located, found no dba either. **Exhibit 11**.  A check of the New York Department of State for corporate registration for AMHC showed various other names that were subsidiaries or dba's, but ABC was not there.

**Exhibit 12** is a statement from the Suffolk County telling us there is no record of American Brokers Conduit as a dba in their county.

A visual inspection by me of the address where ABC was supposedly located found that they were not there and no one recognized the name.  The conclusion was that it was bad information. ABC had never filed bankruptcy and never was associated with American Home Mortgage Corp. This research was done in 2012, about 5 years after AHMC filed bankruptcy.  If ABC was supposed to be there you would think after 5 years it would somehow end up in the AHMC bankruptcy records.  The conclusion of Yesk and Bhatnagar is that ABC never filed bankruptcy as an asset of AHMC or on its own.

On November 5, 2015 the Prosecutor and his witnesses met for the Grand Jury hearing to convince the Grand Jurors that Robert Jacobsen should be indicted for money laundering and for wiring money gained by fraud, or, money laundering.  During the Grand

Jury hearing, Prosecutor Benjamin Kingsley brought in witnesses of David Strange for the

FBI and Julie Ryer for the IRS.  What follows are excerpts from the Grand Jury transcript

with comments.  Both Strange and Ryer committed perjury to the Grand Jury in order to

assist Prosecutor Benjamin Kingsley to get his indictment on me buy claiming ABC was a

valid New York corporation and had filed bankruptcy in 2007 or 2008, along with other

falsities.  There are a total of 15 lies that are significant.   Without these false statements,

under oath, there would never be an indictment making them material facts.


**GRAND JURY EXCERPTS AND COMMENTS**


**<u>Testimony of David Strange</u>, Special Agent, FBI questioned by Benjamin Kingsley**

GJ-0005 line 4

4   Q. Now , was there a legitimate mortgage

5   issuer known as "American Brokers Conduit "?

6   A . Yes . There was.

If American Brokers Conduit has never been a legitimate entity who could not have opened a bank account and could not be part of a contract, how can it be a legitimate mortgage issuer.  It can't.  This is a lie to the Grand Jury.  Lie #1

GJ-00005 line 7

7   Q . And did someone, as perhaps part of the

8   scheme you're investigating, create something

9   called " American Brokers Conduit Corporation "?

10   A . Yes .

11   Q . And are those two things different

12   entities?

13   A . They are different entities.

14   Q . The difference being that one of them has

15   "Corporation" at the end of its legal name and the

16   other one doesn't?

17   A. Yes .

Mr. Strange fails to mention that the difference between  American Brokers Conduit

Corporation (ABCC) and American Brokers Conduit, a non-entity (ABC), is that ABCC is a

legal New York corporation and the other ABC is a non-existent entity.  This was

intentionally misleading to the Grand Jurors.  He should have said ABCC is a valid

corporation and ABC is an unknown entity with no record of it being a New York

corporation or any other kind of legal entity.  Lie #2

_____

GJ-00005 line

22   Q . All right . So as part of the scheme have

23   you identified at least two instances where someone

24   bought homes for which a mortgage had originally

25   been issued by American Brokers Conduit?

GJ-00006

1   A . Yes .

2   Q. And that's the legitimate mortgage issuer.

3   A . Yes .

ABC is not a legitimate mortgage issuer.  It's not even a legitimate company.  It could
not even have a bank account (ie. funded a loan) or be part of a contract.   Lie #3

_____

21   Q . Did he refinance his home in 2007 with a

22   loan from American Brokers Conduit?

23  A. Yes . he did .

To characterize a lender as ABC, a company that couldn't even open a bank account, is

an outright misrepresentation.  Lie #4

_____

GJ-00010

20  Q. And can you just review generally what

21  happened in this case.

22  A. In this particular lawsuit CB Equities

23  sued American Brokers Conduit Corporation stating

24  that the deed of trust on the loan was fraudulent

25  and that they wanted it expunged or annulled.

GJ-00011

1  Q. And what happened?

2  A. The two parties reached an agreement and

3  they presented that agreement to a Federal Judge

4  here in San Francisco, and the agreement was that

5  the loan was indeed invalid and -- and they wanted

6  it expunged and the Judge agreed and signed away

7  the loan.

There is nothing in the stipulation that says ABCC agrees that the loan was indeed

invalid or wanting it expunged.  Here are the exact words ABCC agreed to:

WHEREAS, AMERICAN BROKERS CONDUIT CORPORATION never loaned money with
respect to the deed of trust;
WHEREAS, AMERICAN BROKERS CONDUIT CORPORATION has no objection to this Court's
Judgment expunging, cancelling and nullifying the deed of trust upon the terms hereinafter set
forth;

This is another misrepresentation of the facts to the Grand Jury.  Lie #4

_____

GJ-00011

13   Q . -- along those lines? So according to the

14   court records that you reviewed, what was the name

15   of the attorney who represented American Brokers

16   Conduit Corporation in this lawsuit?

17   A. In this particular case the attorney

18   representing American Brokers Conduit Corporation

19   was named " Alla ," A-1-1-a, "Barbalat,"

20   B-a-r-b-a-1-a-t.

21   Q. And that's the company that in theory,

22   according to this lawsuit, owned the mortgage on

23   the home.

24   A. Correct.


ABCC never said they owned the loan, in fact they said the opposite, that they never loaned money with respect to the deed of trust.  This is an outright misrepresentation.  lie #5.

_____

GJ-00013

**7**   Q. Okay . Have you - - as part of your

**8**   investigation have you discovered what happened to

**9**   the **actual company** referred to as " American Brokers

10   Conduit "?

11   A. Yes. I have .

12   Q. What happened to it?

13   A. American Brokers Conduit went bankrupt

14   around 2007, 2008.

There has never been an "actual company" called ABC and  there is no record of ABC filing bankruptcy in PACER per research by Yesk in December of 2012.  This is lie #6 trying to make ABC appear to be a real company that can file bankruptcy.

_____

GJ-00019

The questioning in this section has to do with the ABC loan and deed of trust on the Danville house, voided by the Court.

14   Q. As far as you're aware, is that 2007 loan

15   issued to Bill Williams still outstanding on 223

16   Verde Mesa?

17   A. It is still outstanding on that

18   property.

Mr. Strange is giving his legal opinion here.  If the deed of trust recorded against the Verde Mesa house is void because there is no valid lender named, then it is not still outstanding.  The court case to reverse the judgment by Deutsche Bank is still undecided as of the date of this writing.  Mr. Strange is just making up facts as he feels helps his case.  Lie #7.

_____

GJ-00020

10   Has your investigation suggested that Robert

11   Jacobsen and perhaps others have purchased homes in

12   this manner or orchestrated the purchase of homes,

13   created these fraudulent lawsuits like the one that

14   you just testified about to make it look like a

15   loan had been expunged, and then resold the homes

16   later on?

17   A. Yes.

  Robert Jacobsen has never purchased a home, filed a fraudulent lawsuit to make it look like a loan had been expunged, and then resold the homes later on.  This is a misrepresentation to the jury.  Lie #8.

_____

**GRAND JURY TESTIMONY OF <u>IRS SPECIAL AGENT JULIE RYER</u> BY BENJMIN KINGSLEY**

  GJ-00288

13   Q. Did ABC and its related entities go bankrupt

14   in 2007?

15   A. Yes .

ABC has never gone bankrupt.  Lie #9

_____

  GJ-00311

16   Q. Both ABC and ABC Corp . were incorporated in

17   New York, correct?

18   A. Correct.

  What she should have said is ABC Corp (ABCC) was incorporated in New York but ABC was never a valid New York corporation.  Lie #10

_____

  GJ-00312

4   GRAND JUROR: Isn't there an incorporation

5   number that goes with corporations somewhere?

6   THE WITNESS: I don't believe it was on the

_____

7   documents that were filed in court.

8    GRAND JUROR: Oh. And no one in the court

9    checked?

10   MR . KINGSLEY: I think that we're asking at

11    this point for speculation.

12   GRAND JUROR: Let's let it progress a little

13   bit.

Here the juror's question is right on point.  Is ABC a real corporation or not?  When asked this question Julie Ryer says she didn't see any numbers on any documents she checked.  It would have been interesting to ask what documents she was talking about. Then the juror is shocked that essentially nobody checked to see if it is a valid corporation. Of course they did check and knew ABC was not a valid corporation.  Mr. Kingsley realizing the juror was getting to close to the actual truth says "I think we're asking at this point for speculation".  There is nothing speculative about the juror's question.  Mr. Kingsley knows there is no ABC corporation and wants to quickly move on before the truth if forced out of Julie Ryer, who knows the truth.  Major lie #11

_____

GJ-00314

25   Q. As far as you're aware, is the 2007 loan

GJ-00315

1    from ABC issued to Bill Williams still outstanding

2    on 223 Verde Mesa?

3    A. Yes.

The ABC Deed of Trust is fake or void, therefore is not outstanding on 223 Verde Mesa.

Also, she is making a legal conclusion.  This is a false statement made to the jury.

Lie #12

_____

　　　GJ-00316

18　 Q. Oh, you ' re talking about

19　 down the -- so at the end of the transaction, are

20　 you aware whether Robert Jacobsen paid Bill Williams

21　 any money?

22　 A.  He did what he promised.

23　 GRAND JUROR: Okay. Thank you.

24　 GRAND JUROR: How much did he pay him?

25　 THE WITNESS: About 55,000 .

Robert Jacobsen never paid Bill Williams any money. The Government has Robert

Jacobsen's bank records and probably those of Bill Williams, that would show that Jacobsen

never paid Williams any money, so, why would Julie Ryer lie about this?  Attached as

**Exhibit 9** shows the cancelled check from CB Equities owned by Clarice Batiste, that

purchased the house from Bill Williams.  Lie #13

_____

　　　GJ-00317

14　 Q. Well, let me ask -- so this -- so ABC

15   originated the mortgage in this case in 2007,

16   right?

17   A. Correct.

18   Q. Then it went bankrupt shortly afterwards?

19   A. Yes.

There is no record of ABC going bankrupt. Since ABC is not a valid New York corporation, it could not have opened a bank account, therefore it could not have loaned any money. Lie#14 and 15

**CONCLUSION FROM GRAND JURY TESTIMONY**

The Government (Prosecutor) knowingly presented false "facts" to the Grand Jury through his cooperating Government witnesses, to try to get an indictment against myself. If Julie Ryer from the IRS and David Strange from the FBI had been truthful and said ABC had never existed as a New York corporation making the deed of trust void from its inception because of not having an identifiable party shown as lender, the Grand Jury would have come up with a different conclusion.  There is some criticism that the procedure used by attorney Bhatnagar to get the stipulated judgment (his "work around") was not proper.  If the procedure was improper, he would have improperly voided an already void deed of trust.  Therefore no one was defrauded using Bhatnagar's questionable legal procedure.  Therefore there can be no money laundering or wire fraud of wiring of fraudulently obtained money.  I believed and trusted the two attorneys handling these cases.

When the juror specifically requested to know if American Brokers Conduit was a valid corporation, specifically, has corporate registration numbers in New York, Benjamin Kingsley brushed him off telling him they would get back to that another time (paraphrased).  Of course they never came back to the subject.

This was an intentional presentation of false evidence to get an indictment by Benjamin Kingsley, Julie Ryer and David Strange, who must have agreed to this false testimony prior to coming to the Grand Jury, ie conspiracy to defraud the Court. In order to keep from looking like they wasted almost two years preparing for this Grand Jury hearing, then losing, they concluded they must lie about the status of ABC (violations of 18 US Code §1823 Making false declarations before a Grand Jury).

I further believe that Mr. Kingsley was not in this by himself. I wasn't invited to the Grand Jury to see for myself, but it is my belief that Acting United States Attorney Brian Stretch and Chief, Criminal Division David R. Callaway were heavily involved with this conspiracy to defraud the Grand Jury. Both their signatures, along with Benjamin Kingsley, are shown at the bottom of the last page of the indictment. Probably all parties named on the case as attorneys to be served. I would like to know if they were all there at the Grand Jury hearing listening to the false testimony and did nothing. There needs to be more research.

### INEFFECTIVE ASSISTANCE OF COUNSEL

1. **Attorney should have acted on knowledge of IRS/FBI Perjury**: After my attorney had become more familiar with my case, he understood that the Grand Jury had been heavily influenced by false testimony by IRS and FBI by telling the Grand Jury ABC was a valid New York corporation, when we know that if they had responded that ABC was a fake/non-existent entity shown on the deeds of trusts that were made void, they would not have come to the same conclusion to indict. Using a procedure of whatever kind, to void an already void deed of trust, no mater what the procedure, did not deny any legitimate lender of a deed of trust. It was already void before the procedure. My attorney

knew this and should have filed a motion to set aside the indictment given the circumstances of the perjury in the Grand Jury by the Prosecutor's witnesses Strange and Ryer.  This never happened.  This would have ended this case about two years ago.   This constitutes ineffective assistance of counsel.

2. **Untrue Guidance by Legal Counsel Regarding False Testimony.**  With knowledge the Prosecutor is capable of fabricating evidence and bringing in witnesses to give false testimony, including the FBI and IRS witnesses, my attorney should have advised me that the false testimony in trial can be counteracted by proving the statements are untrue and discrediting the witness or the Prosecutor's exhibits.  I was led to believe the jury is more apt to believe the Prosecutor's witnesses, especially ones from the FBI and IRS that seemingly have no vested interest in the trial outcome, therefore I would not be able to effectively fight that testimony.  "You will lose because of the Prosecutor's witnesses", meaning the lying witnesses.  I was told it would be best to accept the plea agreement.  I now know you can effectively discredit even the Government witnesses' testimony as can be seen in this motion.  This constitutes ineffective assistance of counsel.  I believe I am innocent and could get past the lying witnesses and fabricated evidence and prove my innocence.  I should not have believed my attorney and insisted on going to trial.

**3.      Lack of Preparation by Attorney**: Whenever I would request to come to my attorney's office to start going over the mountain of documents the prosecution has provided, I was told ok, but I was limited to 2 hrs.  I asked many times.   Otherwise, I could only look at the raw digital data provided.  I wanted to see all the notes, tabs and sorting my attorney had done.  It never was convenient for me to come in and spend some serious time

going over the evidence.  I <u>never</u> saw the files.  We always ended up talking about something else.

I felt I could contribute to the explanation of how the various documents, emails and transcripts fit into my understanding I was innocent of wrongdoing.  He would sometimes say things that were not factual regarding the details of the case, so I concluded he needed to go over the information with me to learn the true story. This never happened and therefore my attorney would not have been able to properly respond to questions or statements in trial.  His reluctance to show me his work preparing the many documents for trial, made me certain he was nowhere near ready to defend me in trial.  Maybe he had not organized the files at all?  The trial was now upon me.   I didn't feel he could provide adequate defense without the story behind the significant individual documents.  Therefore agreeing to the plea agreement might be worth considering.  <u>Ineffective assistance of counsel.</u>

**4.** **Told About Trial at Sentencing Hearing:**  At the time when my attorney and I met in front of the courtroom to talk over the plea agreement, he told me there would still be a "mini trial" at the sentencing hearing, where I could present my case.  After the plea agreement hearing I asked him about which witnesses we should bring in where I was told we couldn't bring in any witnesses and there wasn't really a trial.  Just a hearing having to do with sentencing which at times might sound like a trial, but there is no way I could be found not guilty.  No trial.  I never would have agreed to the plea agreement if I had known the true nature of the "mini-trial" at sentencing.  I felt tricked.  This constitutes ineffective assistance of counsel.

**4.**     **Lack of understanding of Plea Agreement**:  Right before the plea hearing, my attorney and I sat outside the courtroom.  He asked me if I had the plea agreement and had any questions.  I had glanced it over, had questions, but there was no time.  I asked a few things that came to mind.  We had to go into court.  I did not understand the plea agreement and was very anxious.  I couldn't concentrate.  It was all happening way to fast for me. When I am under stress, my blood pressure spikes up to around 200/135 that even the 3 medications I take to lower blood pressure can't control, I get a splitting headache and my ability to concentrate is greatly reduced.  I don't remember events that transpire, even that happened seconds before.  The plea agreement was just a blur including when it was read to me in court.  By the time the end is reached I won't know anything of the document that came before.

New counsel was appointed so I could motion to reverse the plea agreement.  When my new counsel was reading over the plea agreement out loud,  I had no recollection of much of it.

I needed more time to digest what the significance of the plea agreement was before being rushed into court to agree to it.   That day I had no clear understanding of what the plea agreement meant or what the consequences would be.  I wasn't told the agreement of the plea agreement didn't have to be agreed to right then.  It can be done any time before the end of the trial.  This constitutes ineffective assistance of counsel.

6.     **Motion to Cancel Indictment**.  Since I was not made aware of the ability to set aside the Grand Jury indictment until after I was appointed new counsel which is as it I understand, a motion to set aside the indictment must happen before the plea agreement. I have been told I must first reverse the plea agreement then motion to get the indictment

cancelled.  I was never told about a motion to cancel the indictment by my attorney, Mr. Crudo.  I would have wanted to do this.  I fear the reason nothing was done is the unwritten law not to harm other attorneys.  This constitutes ineffective assistance of counsel.

7.      **Never told I could negotiate the plea agreement:**  I was never told you could negotiate the plea agreement, rather take it as it was or not at all.  I have since found out that is not the case.  This constitutes ineffective assistance of counsel.

8.      **Threat if I didn't take plea agreement:**  I was told, sign the plea agreement or possibly get up to 20 years when you lose in trial (paraphrased).  The likelihood of getting a 20 year sentence is extremely unlikely in a criminal case such as this.  My counsel should not have used this very unlikely outcome as a threat.  This constitutes ineffective assistance of counsel.

**REQUEST OF THE COURT**

I request the Court reverse the plea agreement for the reasons given above followed by the setting aside of the indictment.  If the later can't happen, I look forward to a fair trial with truthful witnesses provided by the prosecution.  Up to now the behavior of the prosecutor and his witnesses is despicable.  I want to have my day in court for a fair trial.

Robert Jacobsen, pro se