STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

BENJAMIN KINGSLEY (CABN 314192)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-6937
FAX: (415) 436-7234
Benjamin.Kingsley@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>  v.<br><br>ROBERT JACOBSEN,<br><br>      Defendant. | CASE NO: CR 15-518 MMC<br><br>UNITED STATES' OPPOSITION TO DEFENDANT'S 28 U.S.C. § 2255 MOTION |

# TABLE OF CONTENTS

# CONTENTS

I.  INTRODUCTION ...........................................................................................................1

II. BACKGROUND ............................................................................................................2

    A.  Factual Background ..........................................................................................2

    B.  Procedural Background......................................................................................4

III. ARGUMENT .................................................................................................................9

    A.  Jacobsen Waived His Right to Bring Actual Innocence Claims, and Does Not Assert Valid Actual Innocence Claims Concerning the Wire Fraud or Money Laundering Convictions (Grounds One through Five) ......................................12

    B.  Jacobsen's Ineffective Assistance Claims Should Be Rejected.........................19

IV. CONCLUSION..............................................................................................................24

# TABLE OF AUTHORITES

Page(s)

Cases

*Blackledge v. Allison*,
    431 U.S. 63 (1977)....................................................................................... 17
*Bousley v. United States*,
    523 U.S. 614 (1998)....................................................................................... 15
*Carriger v. Stewart*,
    132 F.3d 463 (9th Cir. 1997) ................................................................... 13, 14
*Herrera v. Collins*,
    506 U.S. 390 ................................................................................................. 13
*Hill v. Lockhart*,
    474 U.S. 52 (1985) ........................................................................................ 21
*Jones v. Taylor*,
    763 F.3d 1242 (9th Cir. 2014) ...................................................................... 13
*Lockhart v. Fretwell*,
    506 U.S. 364 (1993) ...................................................................................... 22
*Massaro v. United States*,
    538 U.S. 500 (2003) ...................................................................................... 14
*McQuiggin v. Perkins*,
    569 U.S. 383 (2013) ...................................................................................... 18
*Muth v. Fondren*,
    676 F.3d 815 (9th Cir. 2012) ........................................................................ 17
*Strickland v. Washington*,
    466 U.S. 668 (1984).................................................................................. 21, 22
*Turner v. Calderon*,
    281 F.3d 851 (9th Cir. 2002) ........................................................................ 13
*United States v. Frady*,
    456 U.S. 152 (1982).............................................................................. 15, 16, 17
*United States v. Fry*,
    322 F.3d 1198 (9th Cir. 2003) ...................................................................... 21
*United States v. Kramer*,
    195 F.3d 1129 (9th Cir. 1999) ...................................................................... 20
*United States v. Morrison*,
    113 F.3d 1020 (9th Cir. 1997) ...................................................................... 17
*United States v. Pruitt*,
    32 F.3d 431 (9th Cir. 1994) .......................................................................... 14
*United States v. Reves*,
    774 F.3d 562 (9th Cir. 2014) ........................................................................ 14
*United States v. Ross*,
    511 F.3d 1233 (9th Cir. 2008) ...................................................................... 17
*United States v. Sar-Avi*,
    255 F.3d 1163 (9th Cir. 2001) ...................................................................... 19
*United States v. Simmons*,
    923 F.2d 934 (2d Cir. 1991)........................................................................... 21

*United States v. Thiele*,
  314 F.3d 399 (9th Cir. 2002) ................................................................ 20

Statutes

18 U.S.C. § 1341 ...................................................................................... 11
18 U.S.C. § 1343 ................................................................................... 4, 11
18 U.S.C. § 1956(c)(7)(A) ....................................................................... 20
18 U.S.C. § 1957 ......................................................................... 4, 11, 19
18 U.S.C. § 1957(f)(3) ............................................................................. 20
18 U.S.C. § 1961(1) ................................................................................. 20
28 U.S.C. § 2255 ........................................................................ 1, 9, 13, 14
28 U.S.C. § 2241 ..................................................................................... 13

## I. INTRODUCTION

Defendant has filed a motion seeking post-conviction relief, pursuant to 28 U.S.C. § 2255. Dkt. 245. This Court has ordered a response. Dkt. 247.

Defendant's motion should be denied. Defendant is not actually innocent, as his motion claims, but in fact quite guilty of the crimes for which he was convicted. As defendant admitted, he knowingly misled attorneys, courts, title companies, and home buyers in a scheme to obtain money and property, and then moved the proceeds of that scheme through financial institutions. As this Court and the Ninth Circuit previously found, defendant was of sound mind when he pleaded guilty under oath—following this Court's careful and detailed plea colloquy—to this innovative and complex scheme. His plea was accompanied by a lengthy factual basis, memorialized in the plea agreement and signed by defendant, and again agreed to in open court, under oath, by defendant during his plea colloquy. In his plea agreement and plea colloquy, he admitted to lying and deceiving others to obtain property—the core elements of a scheme to defraud. He also promised not to withdraw his plea, and knowingly and voluntarily waived his right to appeal his conviction and waived his right to file a § 2255 motion, other than to raise claims of ineffective assistance of counsel.

Nonetheless, beginning in April 2018 and continuing June 2018, after he pleaded guilty, defendant made a series of three pro se pleadings. At the time, he was represented by extremely competent defense counsel, Ken Wine, who had advised defendant not to make such filings. In those filings, the first of which the Court permitted, defendant made claims of ineffective assistance of counsel, grand jury misconduct, and a lack of voluntariness in his plea. He made various claims in these filings, but at their core, he contended that the deeds of trust that were the subject of his scheme to defraud were in some way void, and thus he had not committed a crime—and that his attorneys should have defended his case somehow on this theory. This Court considered his arguments, and rejected them.

Defendant now reraises these same arguments in the guise of "actual innocence" and ineffective assistance claims as part of his § 2255 motion. He presents no new information or facts, or any reason to believe that this Court erred in considering these issues the first time he raised them. He also offers no reason to doubt that what he said when he pleaded guilty was true. He was properly convicted and

sentenced for his conduct. The claims in his motion are waived by his plea agreement, procedurally barred, already rejected by this Court, and/or completely meritless. His claims should all either be dismissed or denied.

## II. BACKGROUND

### A. Factual Background

This Court is familiar with defendant's offense conduct, but it is briefly summarized below. These facts are drawn from defendant's own plea agreement and the undisputed facts from the PSR.

#### 1. Scheme to Defraud

Robert Jacobsen was charged with, and pleaded guilty to, a sophisticated real estate fraud and money laundering scheme. In sum, in 2012 and 2013, defendant executed a scheme to create the appearance that mortgage liens on three Bay Area homes had been eliminated via fraudulent lawsuits (including one filed in this district) in which he controlled both sides of the lawsuits. He then sold or attempted to sell the homes, keeping the majority of the profits for himself. Defendant laundered the money through a variety of entities (including an offshore account) and bought a $475,000 yacht with the funds.

Defendant identified homes that had mortgage liens that secured loans originated by an entity known as "American Brokers Conduit" ("ABC") which was a "d/b/a" for a New York mortgage originator known as "American Home Mortgage Corporation" that went bankrupt during the financial crisis. PSR ¶ 6. He then approached the owners of these homes, and told them that he had a way to eliminate the mortgages on their homes by filing a lawsuit. PSR ¶ 9. In exchange for signing the deeds of their homes over to him, defendant told the homeowners (or, in one instance, a real estate agent acting on behalf of the homeowner) that he would file such a lawsuit, that they could stay in their homes until he sold the home, and that when he did sell the home, he would pay them a small share of the proceeds. *Id.* At defendant's direction, the homeowners signed the deeds of their homes over into entities defendant controlled—in two cases ("CB Equities" and "Bay Ridge Properties") to entities he controlled through nominees, and in a third case ("EquitecWest") to an entity that he controlled directly. *Id.*

Additionally, defendant caused the creation of, and controlled, a company in New York called "American Brokers Conduit Corporation" ("ABC Corp."). PSR ¶ 7. This entity was not the real

mortgage originator, ABC, and had no relationship whatsoever with that real mortgage originator, or any entity that had loaned money or owned the liens on the homes. Three times, defendant filed a collusive lawsuit against this fake ABC Corp.—on behalf of each of the three entities he controlled that owned the homes—falsely claiming, in each case, that the loans that were secured by the mortgage liens were never actually made by the beneficiary of the lien. PSR ¶ 9. One lawsuit was filed in this district. PSR ¶ 12. One was filed in San Francisco Superior Court. PSR ¶ 23. The third was filed in Monterey Superior Court. PSR ¶ 17. Each lawsuit ended with a stipulated judgment, instigated by defendant who controlled the lawyers for the plaintiff and the defendant, in which the parties agreed that defendant's fake ABC Corp. had not made the loan in question (which, of course, it had not, because it was not a real company) and thus purporting to invalidate the mortgage lien on the home. PSR ¶¶ 12, 17, 23. In each case, no notice was given either to the real ABC (which was part of a bankruptcy trust) or to the entities that actually serviced or owned the loans on the homes.

Defendant then, either himself or through a nominee, recorded the judgments in the respective recorder's offices for each property and then attempted to sell each home. He successfully sold the San Francisco and Danville homes, for $1.2 million and $540,000, respectively, with title companies clearing title on the homes based on the fraudulent judgments, and unsuspecting individuals buying homes with existing mortgage liens on them. PSR ¶¶ 13, 26. The Danville home was then resold to unsuspecting buyers, based on defendant's same fraudulent judgment, for $800,000. PSR ¶ 15. According to an email sent by defendant, he had a buyer willing to buy the Monterey house for $3 million, but he could not clear title. PSR ¶ 18.

### 2. Money Laundering

After defendant paid off certain (knowing or unknowing) participants in his scheme—the nominees and the original homeowners—he pocketed the remaining proceeds from the sales of each of the two homes. *See* PSR ¶¶ 13, 26 (describing payment of funds after the sale). Defendant received $463,000 personally from the sale of the Danville home, in a shell company he had created, called Altec Properties. PSR ¶ 13. Defendant received $946,000 personally from the sale of the San Francisco home, which he had wired to his bank account in the name of another shell company, Equitec Corporation, at Belize Bank International, in Belize. PSR ¶ 26. After defendant obtained his fraud

proceeds, he laundered the funds in a series of complex transactions that were clearly designed to try to hide the source of his funds. *See* PSR ¶ 27. He eventually moved all of the funds transferred to Belize back to the United States—demonstrating his overseas account was solely an intermediary account designed to launder what he knew to be dirty money. *Id.* He then used $475,038 in fraud proceeds, across two transfers, to pay for the 54' Hylas yacht seized by the government in North Carolina. PSR ¶ 28. Count Twenty-One of the indictment, to which defendant plead guilty, involved funds transferred for the purchase of the yacht, and defendant agreed to forfeit his interest in the yacht as part of his plea agreement.

### B. Procedural Background

#### 1. Indictment and Guilty Plea

On November 5, 2015, defendant was charged in an indictment with thirteen counts of wire fraud, in violation of 18 U.S.C. § 1343, and nine counts of engaging in monetary transactions in property derived from a specified unlawful activity, in violation of 18 U.S.C. § 1957. Dkt. 1. Trial was set to begin on July 24, 2017 at 9:00am. Dkt. 66. But on July 19, 2017, the eve of trial, defendant pleaded guilty to one count of wire fraud and one count of money laundering (Counts Seven and Twenty-One of the indictment, respectively). Dkt. 136 (plea agreement); Dkt. 138 (plea colloquy transcript). Defendant's plea agreement contained a lengthy factual basis outlining his fraud and money laundering, and defendant signed and dated this agreement on July 19, 2017. Dkt. 136 at 2–4, 10.

Among the factual admissions made by defendant in the plea agreement are the following:

- Defendant admitted he "devised and executed a scheme to defraud involving real estate." *Id.* at 2.

- He admitted that he "caused to be registered an entity in New York called 'American Brokers Conduit Corporation,'" and that he "knew this entity was not the entity for whose benefit the deeds of trust on the homes had been recorded." *Id.* at 3.

- He admitted that he "nonetheless caused an attorney to file lawsuits . . . seeking to invalidate the deeds of trust." *Id.* He admitted that the complaints in these lawsuits "misleadingly defined" the defendant in the lawsuit as "ABC" and "stated that the 'deed of trust was recorded by Defendant ABC,'" and that "[t]his statement was false, as the

deeds of trust had not been recorded by the defendant ABC Corp. that I had created in 2012.'" *Id.*

- He admitted that he "controlled both the plaintiffs and defendants, and their attorneys, in each of the lawsuits, and directed them, in each case, to agree to stipulated judgments that purported to invalidate the liens. *Id.* He further admitted that these "stipulated judgments falsely stated or misleadingly implied that the deeds of trusts designated ABC Corp. as the lender of the mortgages" when, "[i]n reality, the deeds of trust did not designate ABC Corp. as the lender of the mortgages." *Id.*

- He then admitted he recorded the "fraudulently obtained judgments" and then "sold the homes, intended that the buyers in the transactions would believe that the ABC deeds of trust had been invalidated by the court orders [he] had obtained." *Id.* He admitted that, "in each case, [he] intended for the buyers to rely, directly or indirectly, on the fraudulent court judgments that [he] had obtained." *Id.*

- He agreed that these "representations were false, and that [he] made them or caused them to be made knowing that they were false at the time they were made." *Id.* He agreed that "they were material to the buyers of the homes in that they had a natural tendency to influence the buyers to part with money to purchase the homes." *Id.* He agreed that, "in making these representations or causing them to be made, [he] acted with an intent to defraud." *Id.*

At the change of plea hearing, this Court conducted a very careful and detailed plea colloquy with defendant. Dkt. 138. Among the topics covered during the plea colloquy, this Court explicit asked defendant if he had "read over and [was] familiar with" the facts contained in the factual basis of the plea agreement, which included the above admissions (and more). *Id.* at 27. Defendant, under oath, responded, "Yes, Your Honor." *Id.* This Court then asked whether they were "true and correct in all respects." *Id.* Defendant again responded, "Yes, Your Honor." *Id.* In his plea agreement, the defendant explicitly waived his right to appeal his conviction or file a Section 2255 motion, except for to claim of ineffective counsel. *Id.*

       2.    *Attempts to Withdraw His Guilty Plea*

After firing Attorney Timothy Crudo, who guided him through his plea, and then ignoring the advice of his next counsel, Attorney Kenneth Wine, who was appointed by the Court to replace Attorney Crudo, defendant filed a series of three motions with this Court in attempts to withdraw from his guilty plea. Dkt. 158 (first pro se motion to withdraw plea or dismiss indictment); Dkt. 161 (pro se motion for leave to file motion for reconsideration of first motion); Dkt. 163 (second pro se motion to withdraw guilty plea). This Court permitted defendant to file the first motion (though not the second and third), and then the Court denied each motion. Dkt. 160 (denial of first motion); Dkt. 162 (denial of motion for leave); Dkt. 165 (denial of second motion).

Defendant raised various claims in these motions, of which there were two primary factual themes: (1) that his mental condition at the time of his plea rendered him unable to understand and meaningfully plead guilty, and (2) that defendant was, in fact, not guilty of his crime because the deeds of trust that were the subject of his fraud scheme were void—the exact same argument defendant repeats throughout his present § 2255 motion.

In his first motion (which much like the declaration defendant has filed supporting his present § 2255 motion, described acts defendant had taken or caused to be taken in the third person), defendant repeatedly detailed his theories on the void nature of the deeds of trust, dkt. 158 at 1–6, and then claimed that as a basis for grand jury misconduct, *id.* at 6–18, and ineffective assistance of counsel, arguing that his attorneys should have pushed the "deeds of trusts are void" argument as a defense instead of advising him to plead guilty, *id.* at 18–19, 22. He also raised other claims, including that his attorney was not prepared, *id.* at 19, and his understanding of his guilty plea and the impact of pleading guilty, *id.* at 20–22.

This Court rejected these arguments and his first motion. The Court noted that defendant "appears to take the position that if ABC is not registered as a corporation, it is not identifiable, thus rendering the deed of trust void." Dkt. 160 at 2 n.2. The Court then rejected the argument that the grand jury was misled or the indictment should have been set aside on this basis, explaining that the indictment did not allege that "ABC" was the corporate lender, but instead that ABC was a name under which the actual lender conducted business. *Id.* at 2. The Court thus found that "any motion to set aside the indictment on the grounds set forth by defendant in the instant motion would have been denied, and,

consequently, defendant has failed to show his prior counsel was ineffective." *Id.* The Court also rejected defendant's arguments that his counsel was ineffective in connection with his plea and that defendant did not understand the plea agreement. *Id.* at 3–4.

In his second motion, defendant asked for reconsideration of the Court's denial of the prior motion, again arguing that the deeds of trust were void and claiming that there was a "material difference in fact and law" and this Court's "misunderstanding of facts that were unknown to me"— specifically, according to defendant, that "there has never been a company called American Brokers Conduit ever registered," that the company had not complied with California law, and that "new law was found that supports that all contracts where a non-entity was a party are void documents." Dkt. 161 at 1–2.

This Court rejected defendant's second motion, for several reasons. Dkt. 162. This Court first found that defendant did not meet the requirements for a motion to reconsider, as defendant's asserted basis for his motion was not new but rather information that "was available to the public years ago." *Id.* at 2–3. This Court alternatively held that, even if defendant had met the standard, he failed to show any basis to set aside the indictment or base a defense. This Court noted that defendant's "theory is that his counsel should have argued that the subject deeds of trust were 'always void' in light of AHMC's non-compliance with California law requiring it to file a fictitious business name statement, and, consequently, defendant could not have committed wire fraud, as neither AHMC nor any other entity that claimed an interest in those deeds of trust could have been 'defrauded' by the alleged scheme to have them voided by a court." *Id.* at 3. The Court then explained that contracts entered into under a fictitious business name that has not been registered "are not void," but that the "'sole penalty' for a failure to register a fictitious business name 'is a bar from maintaining an action on contracts made in the fictitious business name until the statement is filed.'" *Id.* at 3. As a result, this Court held that defendant's prior counsel was ineffective. *Id.*

In his third motion, defendant again asked for permission to withdraw his guilty plea, claiming that his mental condition at the time led him to not understand his plea and that he was innocent of the charges. Dkt. 163 at 1–6. This Court construed his motion as a second motion for reconsideration, and denied it, finding that the motion did not meet the standard for a motion for reconsideration, that

1  defendant's motion was directly contradicted by his plea agreement and testimony during his plea

2  colloquy, and that defendant provided clear and appropriated responses and actively participated in

3  discussion during his plea colloquy.  Dkt. 165 at 1–4.

4                    3.      *Bond Revocation and Sentencing*

5       Defendant proceeded to sentencing.  On August 17, 2017, shortly before his sentencing hearing,

6  defendant was remanded to custody for violating the terms of his release and committing a new crime.

7  Dkt. 178, 179.  Specifically, the Honorable Jacqueline Scott Corley found that, in the lead up to his

8  sentencing, defendant "fraudulently attempted to rent property involved in the underlying case under a

9  fake name," "concealed from the potential renters the history of the property and his indictment and

10 guilty plea in this case related to the property," and "affirmatively misstated the likelihood and timing of

11 a foreclosure on the property."  Dkt. 179 at 2.  Judge Corley also found that defendant "did not notify

12 Pretrial Service or seek approval for the transaction," and "had no intention of doing so."  *Id.*

13      Following sentencing memoranda from both parties, this Court held sentencing hearings across

14 two days and, on September 4, 2017, sentenced defendant to 78 months of imprisonment.  Dkt. 181,

15 182, 183.  Attorney Wine, who represented defendant through the sentencing, ably represented his

16 difficult client through that sentencing.  In his sentencing memorandum, Attorney Wine argued that the

17 deeds of trust were "subject to being challenged" and made the precise argument defendant made and

18 continues to make, that "ABC does not legally exist."  Dkt. 173 at 2.   He also argued that the attorneys

19 involved in the case, "particularly Rod Ciferri and Michael Yesk, knew what [defendant] was doing."

20 *Id.* at 3.  Attorney Wine made substantial arguments on the loss amount, which was the subject of a

21 significant portion of this Court's consideration during the two-day sentencing hearing.  He made

22 arguments, tethered in actual law, that loss amount should be lower than the government maintained,

23 contending variously that the practice of mortgage fraud cases should apply and defendant should have

24 been credited for the value of the houses after they had appreciated or that this Court should use gain to

25 calculate the loss—resulting in a loss enhancement of +14.  *Id.* at 5–7.  He then persistently argued

26 against the government's loss calculation throughout sentencing.  *See generally* Dkt. 225 (8/22/2018

27 sentencing hearing transcript).  The Court ultimately rejected those arguments and applied an 18-level

28 loss enhancement.  Dkt. 218 (9/4/2018 sentencing hearing transcript) at 14–17 (final Guidelines

calculation).  Attorney Wine also argued that Yesk and Ciferri bore some responsibility for the scheme and that this should be considered as part of defendant's sentencing.  *Id.* at 8–10.

This Court entered judgment on September 6, 2018, dkt. 183, a first amended judgment to add forfeiture of the yacht, dkt. 187, and a second amended judgment to include a specific restitution amount, dkt. 202.

### 4. Appeal

Defendant filed two notices of appeal, appealing the judgment and amended judgments.  Dkt. 184, 203.  Defendant appealed this Court's denial of his motion to withdraw his guilty plea.  *United States v. Jacobsen*, Nos. 18-10335, 18-10417 (9th Cir. 2020) (hereinafter "*Jacobsen Appeal*").  On March 11, 2020, the court of appeals issued a memorandum disposition dismissing his appeal, finding that he had waived his right to appeal in his plea agreement, and "the evidence does not support the conclusion that Jacobsen did not understand his plea, the waiver provision in his plea agreement bars this appeal."  *Id.* at 3.  Defendant did not seek further review.

### 5. Defendant's Motion

On June 8, 2021, defendant filed a motion, pursuant to 28 U.S.C. § 2255, requesting that this Court vacate his conviction and judgment.  Dkt. 245.  Defendant makes actual innocence and ineffective assistance of counsel claims, almost entirely relating to his theory that the subject deeds of trust were void.  *Id.*  On June 21, 2021, this Court ordered the government to respond.  Dkt. 247.

The defendant is currently serving his 78 months' sentence and has a projected release date of February 28, 2024.  (*See* https://www.bop.gov/inmateloc/)

## III.   ARGUMENT

Defendant's § 2255 motion raises several claims of actual innocence and ineffective assistance of counsel.  All of these claims rely on one or both of two irrelevant factual arguments that are entirely non-novel and were either litigated and/or could have been raised by him directly in defending this case.

First, in supporting his claims, defendant repeats extensively the same irrelevant factual argument that he made and that this Court rejected in his motions to withdraw his plea—that the deeds of trust that were the subject of his scheme to defraud were somehow void.  As his motion argues:

> The criminal Court incorrectly concluded that it didn't matter that ABC never existed as a
> valid corporation as was stated on the deed of trust, but that the deeds of trusts were valid

because the lender, ABC, could have been registered as a DBA of a different New York corporation, making the deeds of trust in question valid even though no such DBA had ever been registered. That legal misunderstanding led to the incorrect conclusion that a valid deed of trust had been voided using improper procedures in the three lawsuits. Therefore, damages were incorrectly assessed. There were no damages from voiding an already void deed of trust. Jacobsen's attorney never pointed out that under California law, the deeds of trust were void, and no DBA could have been formed as described above to make them valid. There was no loss caused by voiding an already void deed of trust. If Jacobsen's attorney had brought this up with the Court, it would have changed the course of this criminal case.

Dkt. 245 at 20; *see also id.* at 35–41 (arguing in detail that deeds were invalid). Defendant has previously made this exact argument, and had it rejected factually and legally by this Court. He presents no new information regarding it now. It is also completely irrelevant to this case. As defendant's own plea agreement explains, defendant intentionally lied to and misled people to obtain money and property over which he had no right. Whether or not he thought the deeds were void, he was not allowed to lie and cheat to obtain control of and sell homes to unsuspecting third parties.

Second, relatedly, he argues that because Nikhil Bhatnagar and/or Michael Yesk represented his shell entities in his lawsuits against his fake ABC entity that he also controlled, that he relied on advice of counsel Michael Yesk. Dkt. 245 at 20 ("The Yesk Law attorneys did all the legal work in the three lawsuits."); *id.* at 24 ("Based on Yesk's advice and this judgment, he believed that a deed of trust showing a lender was a non-existent corporate entity made the deed of trust void."); *id.* at 30 ("All legal strategy and legal work was done by Yesk Law."). This argument is similarly not new information and is irrelevant, as again, defendant's belief that the deeds were void has no bearing on whether he lied and cheated his way through his scheme. It is also generally factually inaccurate, as defendant's own plea agreement acknowledged his fraudulent control—through a nominee first and then through an email account under a fake name—of the defendants, and both sets of their attorneys, in his lawsuits.

These two arguments are at the heart of each of his § 2255 claims. He brings four "actual innocence" claims based on this argument: (1) he was actually innocent of wire fraud[1] because

---

[1] In making this claim, defendant's brief references "[t]he mail fraud statute, 18 U.S.C. § 1343." Dkt. 245 at 41. Section 1343 is the wire fraud statute, and defendant presumably means to say that he was innocent of wire fraud, and not mail fraud, since he was neither charged with nor convicted of a

the deeds were void and because he relied on Michael Yesk's view that the deeds were void, dkt. 245 at 41–42; (2) he was actually innocent of his violation of 18 U.S.C. § 1957 money laundering, because he lacked fraudulent intent[2] as he believed the deeds were void and he relied on Yesk's view that the deeds were void, *id.* at 42–43; (3) he was actually innocent of money laundering because "there was no criminally derived property" because the deeds were void, *id.* at 43; and (4) he was actually innocent of money laundering because he did not engage in specified unlawful activity, again because the deeds were void, *id.* at 43. He also claims (5) that there should have been no loss or restitution for sentencing purposes because the deeds were void, *id.* at 44.

He finally claims (6) ineffective assistance of both trial and appellate counsel, based on failure of his counsel to argue before this Court and on appeal that (a) advice of counsel was a defense to wire fraud, (b) advice of counsel was a defense to money laundering, (c) the lack of loss was a defense to money laundering, (d) the lack of loss was a defense to restitution, (e) the lack of specified unlawful activity was a defense to money laundering, and (f) some unspecified argument regarding the 18-level loss enhancement. *Id.* at 44–46.

All of defendant's claims should be denied or dismissed. As an initial matter, defendant waived his right to appeal and collaterally attack his conviction or sentence under a § 2255 motion, while reserving his right to claim his counsel was ineffective. He has also procedurally defaulted on some of his claims. On the merits, defendant agreed to the facts stipulated in the plea agreement. Grounds one through five relitigate issues already addressed by this Court, and in any event, they are irrelevant, are not based on new information, and are not supported by any actual evidence. Lastly, his claims regarding Attorney Wine and Attorney Vorobyov are in part procedurally barred and in any event, meritless.

Each issue is discussed below.

---

violation of 18 U.S.C. § 1341, the mail fraud statute.

[2] As discussed below, § 1957 does not require fraudulent intent. It does require specified unlawful activity, which, in this instance, was defendant's fraud scheme—and that requires fraudulent intent, which is the basis for defendant's fourth ground.

**A.** **Jacobsen Waived His Right to Bring Actual Innocence Claims, and Does Not Assert Valid Actual Innocence Claims Concerning the Wire Fraud or Money Laundering Convictions (Grounds One through Five)**

Defendant claims he did not commit fraud or money laundering and relitigates the exact same issues that this Court rejected in his post-guilty plea motions. Read most favorably to defendant, these constitute freestanding claims of actual innocence—that is, claims of actual innocence independent from constitutional error in the underlying proceeding.

The Ninth Circuit has "not resolved whether a freestanding actual innocence claim is cognizable in a federal habeas corpus proceeding in the non-capital context, although [it has] assumed that such a claim is viable." *Jones v. Taylor*, 763 F.3d 1242, 1246 (9th Cir. 2014). Assuming such a claim is cognizable, as many courts have done, a "habeas petitioner asserting a freestanding innocence claim must go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent." *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997) (en banc)). "The Court in *Carriger* explained that the standard is "'extraordinarily high,' and that the showing [for a successful claim] would have to be 'truly persuasive.'" *Id.* (quoting *Herrera v. Collins*, 506 U.S. 390, 417) (O'Connor, J., concurring)). Courts have indicated that such a claim generally would rest on newly discovered evidence, not information available to defendant during the pendency of his criminal case. *See Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002) ("The one exception is when a defendant introduces affirmative proof of actual innocence based on newly discovered evidence."); *see also Herrera*, 506 U.S. at 400 ("Federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution -- not to correct errors of fact."); *Carriger*, 132 F.3d at 477 ("Carriger has presented no evidence, for example, demonstrating he was elsewhere at the time of the murder, nor is there any new and reliable physical evidence, such as DNA, that would preclude any possibility of Carriger's guilt.").

Assuming for the purposes of argument that freestanding actual innocence claims are even cognizable for a non-capital federal defendant in a § 2255, these claims are waived by his plea agreement and procedurally barred. They also entirely fail in substance.

   *1.   Defendant's Actual Innocence Claims Are Waived by His Plea Agreement*

As an initial matter, all of defendant's freestanding actual innocence claims are waived by his

plea agreement. In his agreement, he stated that he agreed "not to file any collateral attack on my conviction or sentence, including a petition under 28 U.S.C. § 2255 or 28 U.S.C. § 2241, except that I reserve my right to claim that my counsel was ineffective." Dkt. 136 at 4. This Court explicitly covered this provision of the plea agreement during the plea colloquy. Having discussed the appellate waiver in the plea agreement, this Court then explained that the waiver was:

> applicable also with respect to a collateral attack. A collateral attack is sometimes called a petition for writ of habeas corpus. It doesn't come with the right to have a lawyer representing you at no cost. You could always pay for a lawyer. And in this instance if you went to trial you would have the right without any limitations, again, to bring, if you felt you had grounds for it, a collateral attack. In this instance you're giving that up again, except with this very limited ground that your lawyer, you know, did a bad job, to the extent that it wasn't even in accord with the Constitution, and so not effective in representing you. Okay. Do you understand that as to this collateral attack as well?

Dkt. 138 at 26. Defendant responded, "I do, Your Honor." *Id.*

The waiver of the right to collaterally attack a sentence pursuant to § 2255 in a plea agreement is enforceable if express, knowing, and voluntary. *United States v. Reves*, 774 F.3d 562, 566 (9th Cir. 2014), *citing United States v. Pruitt*, 32 F.3d 431, 433 (9th Cir. 1994). Defendant's waiver clearly applies to all § 2255 claims other than those of ineffective assistance of counsel, so it is express. It was made knowingly and voluntarily, as the record from the plea colloquy confirms. And defendant's prior attempts to claim his plea was involuntary have been correctly rejected by this Court and by the Ninth Circuit, which also enforced the parallel appellate waiver in defendant's plea against him, finding it was knowing and voluntary, and dismissed his appeal. This Court should similarly enforce his § 2255 waiver as to all claims but those alleging ineffective assistance of counsel—which includes all of his actual innocence claims. *See United States v. Jaquez-Diaz*, No. CR 04-0021-PHX-PGR, 2008 U.S. Dist. LEXIS 124601, at *6 (D. Ariz. Nov. 26, 2008) (applying waiver in plea agreement to freestanding actual innocence claim).

> 2.    *Defendant's Actual Innocence Claims Are Procedurally Barred*

Defendant's actual innocence claims are also procedurally barred. Generally, "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." *Massaro v. United States*, 538 U.S. 500, 504 (2003). A movant raising a claim

for the first time in post-conviction proceedings is in procedural default, and is precluded from asserting the claim. *Bousley v. United States*, 523 U.S. 614, 621 (1998) (finding default where petitioner challenging his guilty plea did not raise claim in direct appeal); *United States v. Frady*, 456 U.S. 152, 165 (1982) (noting that a motion to vacate or modify a sentence under 28 U.S.C. § 2255 cannot be used as a substitute for a direct appeal).

As discussed above, in attempting to withdraw from his plea agreement, defendant made essentially the same factual argument he makes know in all of his actual innocence claims—that he did not commit fraud or money laundering because he believed the deeds of trust were void and/or the deeds were, in fact, void. This Court considered and rejected those arguments. Defendant then took a direct appeal. On direct appeal, the issues presented in his opening brief were:

> I.  Whether the waiver of appeal provision in Jacobsen's plea agreement bars consideration of the merits of his appeal argument that the plea was involuntary?
>
> II.  Whether the district court abused its discretion in denying Jacobsen's presentence motion to withdraw the plea on the grounds it was involuntary?

*Jacobsen Appeal*, Dkt. 23-1 at 9. Defendant's 39-page opening brief in the court of appeals relates to defendant's state of mind in entering his plea—and thus the involuntariness of his plea. *Id.* at 10–39. It nowhere argues that defendant was actually innocent, that the plea lacked a sufficient basis, or that this Court erred in rejecting defendant's arguments regarding the validity of the deeds of trust and their impact on his guilt.[3]

Defendant had all the information necessary to make these claims both during his pending criminal case before this Court (and did, in fact, generally make them) and on appeal. But he did not do so through his appeal. This § 2255 proceeding is not a vehicle for defendant to appeal this Court's prior rulings on his substantive claims regarding the deeds of trust.

Because defendant could have appealed the district court's rejection of his argument that the deeds were void and that invalidated his guilty pleas, and did not, his claims that rely on this

---

[3] Indeed, the failure to take these issues up on appeal is the basis in part for his ineffective assistance claims in this very motion. Dkt. 245 at 46–47 (listing arguments that appellate counsel did not make in the court of appeals).

argument are procedurally defaulted.[4]

### 3. Defendant's Actual Innocence Claims Fail on the Merits

Even if not waived and procedurally barred, defendant's actual innocence claims also are completely lacking in merit, as defendant has not come close to meeting the extraordinarily high burden of affirmatively proving actual innocence. He presents no evidence (new or existing) or change in law that would support his claim of actual innocence. Instead, he simply repeats the very arguments that he made in his post-conviction motions and in his appeal of the denial of his second motion to withdraw. Defendant admitted, under oath, to committing wire fraud and money laundering. Dkt. 138 at 54. Repeating the prior losing arguments this Court has already ruled on does not "affirmatively prove that he is probably innocent." The merits of each his five grounds for "actual innocence" are discussed in turn below.

#### i. Wire Fraud (Ground One)

Defendant asserts that he is not guilty of wire fraud because he believed the deeds were void, and therefore could not have devised a fraudulent scheme. Dkt. 245 at 41. He further states that he is not responsible for his crimes because he was operating under the advice of counsel. Defendant argues that he did not have the required intent to defraud when "encouraging others to pursue those lawsuits or any other acts the United States contended were wire or mail fraud" because he relied on his legal theory regarding the validity of the deeds. Dkt. 245 at 23.

First, his claims are completely undermined by the sworn statements in his plea agreement. Defendant admitted in his plea agreement (affirmed in his plea colloquy) that "he devised and executed a scheme to defraud." Dkt. 136 at 2. He admitted that he "caused to be registered an entity in New York called 'American Brokers Conduit Corporation,'" and that he "knew this entity was not the entity for whose benefit the deeds of trust on the homes had been recorded." *Id.* at 3. He admitted that he caused an attorney to file lawsuits seeking to invalidate the deeds of trust. *Id.* He admitted that the

---

[4] In other contexts, constitutional violations can be raised in collateral attacks despite procedural bars *only if* paired with proof of actual innocence. This is not that situation—defendant does not demonstrate any constitutional or procedural errors, and instead just asks this Court to substantively revisit his convictions on the merits based on arguments he had available to him and did, in fact, make in the district court. These are properly procedurally barred.

complaints in these lawsuits "misleadingly defined" the defendant in the lawsuit as "ABC" and "stated that the 'deed of trust was recorded by Defendant ABC,'" but that "[t]his statement was false, as the deeds of trust had not been recorded by the defendant ABC Corp. that I had created in 2012.'" *Id.* He admitted that he "controlled both the plaintiffs and defendants, and their attorneys, in each of the lawsuits, and directed them, in each case, to agree to stipulated judgments that purported to invalidate the liens," and that the stipulated judgments "falsely stated or misleadingly implied that the deeds of trusts designated" his fake ABC entity "as the lender on the mortgages." *Id.* He then admitted that when he sold the homes, he "intended for the buyers to rely, directly or indirectly, on the fraudulent court judgments that [he] had obtained." *Id.* He agreed that "representations were false, and that [he] made them or caused them to be made knowing that they were false at the time they were made," and that in so doing, he "acted with an intent to defraud." *Id.*

These facts (and others in his plea agreement) overwhelmingly establish his scheme to defraud. As the Supreme Court and Ninth Circuit have repeatedly held, defendant cannot generally overcome his sworn statements made as part of his plea in a collateral attack. *See, e.g.*, *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977) ("[T]he representations of the defendant [at a plea hearing] . . . constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."); *United States v. Ross*, 511 F.3d 1233, 1236 (9th Cir. 2008) ("Statements made by a defendant during a guilty plea hearing carry a strong presumption of veracity in subsequent proceedings attacking the plea."); *United States v. Morrison*, 113 F.3d 1020, 1021 (9th Cir. 1997) ("Any attempt to contradict the factual basis of a valid plea must fail."); *see also Muth v. Fondren*, 676 F.3d 815, 822–23 (9th Cir. 2012) (agreeing with other circuits that collateral challenge in which petitioner seeks to contradict petitioner's statements in favor plea ordinarily fail).

Second, defendant's belief regarding the validity, or not, of the deeds of trust is entirely irrelevant to whether defendant committed the wire fraud for which he was convicted. For the same reason, whether defendant received advice from counsel regarding the validity of the deeds—and thus had reason to believe that the deeds were invalid—is also irrelevant. To establish wire fraud, the government needed to show (1) he knowingly devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises;

(2) materiality; (3) intent to defraud; and (4) use of an interstate wire as part of the scheme.  *See* Ninth

Cir. Model Jury Instructions 8.124–Wire Fraud.  Defendant may have subjectively believed that the

deeds were, in fact, void.  That would not be a defense to the fraud charge of which he was convicted.

Instead of (or after) testing his legal theory (or Michael Yesk's legal theory) in a legitimate civil action

against the actual holder of a deed of trust, defendant lied and cheated his way to obtain money that was

not his—the essence of a scheme to defraud and classic proof of fraudulent intent.  He orchestrated

deceptive and fraudulent lawsuits and judgments in which he controlled both sides of the lawsuits, using

nominees or a fake persona to control attorneys, and then lied to or concealing facts from the buyers of

the homes.  For all of the words defendant has spilled about the validity of the deeds, his arguments

completely ignore actual lienholders (who paid good money for the loans and liens but which he chose

not to sue or serve in his fraudulent lawsuits) and his victims, who paid good money to buy homes from

him, not knowing that there were existing mortgage liens on the homes the validity of which no court

had ever actually adjudicated.  Even if defendant were completely certain that the deeds were not valid,

he was still not permitted to lie to attorneys, courts, title companies, and buyers of homes to obtain and

sell the homes.  As a result, none of defendant's arguments have any bearing on his guilt.

Third, to meet the high standard established in *Carriger*, the defendant would need to prove his

innocence, not just raise doubts about his conviction.  Here, defendant has failed to present any actual

evidence proving he lacked the requisite intent to defraud or to devise a scheme to defraud.

Fourth, defendant's arguments are not new at all, but instead just a repackaging of the exact

factual arguments he made in his post-plea motions that this Court rejected.  In his second pro se motion

to withdraw, defendant raised the same issue regarding the validity of the deeds.  This Court held that

those deeds were valid.  Dkt. 162.  He presents no new evidence, and all of the information supporting

his motion was "substantially available to [him]" when he pled guilty and was convicted.  *McQuiggin v.*

*Perkins*, 569 U.S. 383, 400 (2013).  This Court considered defendant's arguments about the validity of

the deeds previously, and correctly ruled that they were valid and that his arguments did not overcome

his guilty plea.  Just as this Court denied his motions for reconsideration post-plea for making arguments

based on evidence that was completely available to him, his innocence claims, if even coherently

relevant to wire fraud, would fail, as there is no information that he did not have or could not have

reasonably obtained during his case. Given the lack of new or existing evidence, defendant has not met the standard established in *Carriger*, and therefore this claim must fail.

             ii.      Lack of Fraudulent Intent for Money Laundering (Ground Two)

Defendant next claims he was actually innocent of his violation of 18 U.S.C. § 1957 money laundering because he lacked fraudulent intent, because the deeds of trust were void and he relied on Yesk's view that the deeds were void. Dkt. 245 at 42–43.

This argument fails for all the same reasons discussed in Section III.A.3.i regarding wire fraud— it is belied by his plea agreement, the validity of the deeds is irrelevant to his guilt, it does not come close to meeting the *Carriger* standard, and instead of involving new evidence, just relitigates arguments this Court rejected.. Defendant was properly convicted of wire fraud, and he was properly convicted of a monetary transaction involving more than $10,000 in proceeds of that fraud.

This particular claim also fails because § 1957 does not require fraudulent intent on its own. Instead, it requires (1) the defendant knowingly engaged or attempted to engage in a monetary transaction; (2) defendant knew the transaction involved criminally derived property; (3) the property had a value greater than $10,000; and (4) the property was in fact derived from the scheme to defraud. The plea agreement amply establishes each of these elements. Defendant repeatedly wired funds through different banks in amounts of excess of $10,000, and defendant knew that these funds were derived from the fraudulent scheme he admitted to devising.

             iii.     No Criminally Derived Property (Ground Three)

Defendant also argues that there was no criminally derived property, and therefore no financial loss, because the lawsuits he pursued merely attacked already-void deeds. Again, this claim fails for all the same reasons the prior two claims fail, as discussed in Sections III.A.3.i and III.A.3.ii. Defendant who pleaded guilty to intentionally misleading homebuyers into paying him approximately $1.74 million for homes without clear title. He took that money, laundered it through Belize, and bought a yacht with some of it. That he would now claim that there was no loss from his crime because he asserts a long-defunct entity had not filed a proper "d/b/a" notice many years before his crime falls well within the judiciary's "chutzpah jurisprudence." *See United States v. Sar-Avi*, 255 F.3d 1163, 1169 (9th Cir. 2001) (discussing "nascent chutzpah jurisprudence").

### iv.     No Specified Unlawful Activity (Ground Four)

Defendant further argues that he is not guilty of money laundering because he did not engage in a specified unlawful activity—he claims he did not engage in wire fraud because the deeds were void. Dkt. 245 at 43.  This argument fails for all the same reasons as the prior ones.  Defendant committed and was properly convicted of wire fraud, and wire fraud is a "specified unlawful activity."  18 U.S.C. § 1957(f)(3) (defining "specified unlawful activity" as having the same meaning as in § 1956); 18 U.S.C. § 1956(c)(7)(A) (incorporating offenses listed in 18 U.S.C. § 1961(1) into definition of "specified unlawful activity"); 18 U.S.C. § 1961(1) (including § 1343)

### v.     No Loss or Restitution (Ground Five)

Defendant's fifth ground is difficult to understand.  To the extent defendant is claiming he is innocent because there was no loss, that is addressed above and—in any event—loss is not required for a wire fraud conviction.  To the extent defendant is arguing that he was sentenced incorrectly because his sentence looked to actual and intended loss from his fraud and did not account for the fact that the deeds were void—that is not an actual innocence claim, but a claim about an error in sentencing, and one that he has waived and procedurally defaulted on (as he has all the rest).  It also does not really make any sense, as real people lost real money from his fraud.

Finally, to the extent he attacks his restitution order—to which he stipulated—that is not cognizable in a § 2255 claim.  The Ninth Circuit has held that such claims, because they do not result in a defendant's "release," may not be collaterally attacked under § 2255, the statutory equivalent of the writ of habeas corpus.  *See United States v. Thiele*, 314 F.3d 399, 401–02 (9th Cir. 2002) (restitution order may not be attacked in § 2255 motion, even if coupled with other cognizable claims and even if phrased as an ineffective assistance of counsel claim); *United States v. Kramer*, 195 F.3d 1129, 1130 (9th Cir. 1999) ("[B]y its plain terms, § 2255 is available only to defendants who are in custody and claiming the right to be released.  It cannot be used solely to challenge a restitution order.").  Accordingly, this Court should dismiss this claim.

### B.     Jacobsen's Ineffective Assistance Claims Should Be Rejected

In less than three total pages of briefing, defendant claims a litany of ineffective assistance of counsel by both his trial and appellate attorneys.  In general, these claims merely restate his claims for

actual innocence as ineffective assistance claims—repeating that his attorneys, at each moment, should have made the same arguments about the voidness of the deeds that he himself made to this Court in his motions to withdraw his plea. These claims are barred or simply fail and should be denied.

In order to sustain a claim of ineffective counsel, defendant must show that his defense counsel's performance was "objectively unreasonable." *See Strickland v. Washington*, 466 U.S. 668, 688 (1984). More specifically, in the district court context, defendant has the burden of showing that: (1) his defense counsel's performance was deficient; and that (2) this deficient performance prejudiced his defense. *Id.* at 687; *United States v. Fry*, 322 F.3d 1198, 1200 (9th Cir. 2003). The court does not need to "address both components of the inquiry if the Petitioner makes an insufficient showing on one." *Strickland*, 466 U.S. at 697 (recognizing that it will "often" be "easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice").

To satisfy *Strickland*'s first prong, defendant must show that his "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. "The proper measure of attorney performance [is] simply reasonableness under prevailing professional norms." *Id*. Thus, defendant must show that his counsel's acts or omissions were not "within the range of [conduct] demanded of attorneys in criminal cases." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). Post-hoc complaints about the strategy or tactics employed by defense counsel, or complaints that defense counsel did not conduct a sufficiently vigorous pretrial investigation, are typically held insufficient to satisfy *Strickland*'s first prong. *See, e.g., United States v. Simmons*, 923 F.2d 934, 956 (2d Cir. 1991) (holding that appellant's displeasure with strategy employed by trial counsel was insufficient to establish ineffectiveness). Hence, defendant bears the burden of overcoming the heavy presumption that counsel's actions were sound. *See Strickland*, 466 U.S. at 689.

To satisfy the second prong, defendant must show that he was actually prejudiced by the deficient representation he received. *Id.* at 691–92. Thus, an error by counsel alone, even if professionally unreasonable, does not warrant setting aside a judgment in a criminal trial if the error had no effect on defendant's case. *Id*. at 691. Rather, in order to constitute ineffective assistance of counsel, deficiencies in counsel's performance must have been prejudicial to defendant's defense. *Id*. at 692. The focus of this analysis is whether the result of the proceeding was fundamentally unfair or unreliable

because of counsel's ineffectiveness. *See Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993). The prejudice analysis requires defendant to "show that there is a 'reasonable probability' that, but for counsel's unprofessional errors, . . . the fact finder would have had a reasonable doubt respecting guilt." *Id.* at 694–95.

### 1. Claims of Ineffective Assistance by District Court Counsel

Defendant claims that his counsel was deficient at the trial court level, restating his six "actual innocence" claims and contending that his counsel should have made these arguments in his criminal case. Dtk. 245 at 45–46. Defendant does not specify which counsel—Attorney Wine or Attorney Crudo—was deficient in this regard. He does not specify when, and how, and in what manner each counsel should have made most of these arguments (other than the arguments specific to sentencing). But in any event, though not barred by his plea agreement, each of these claims fail. Both Attorney Crudo and Attorney Wine are excellent, experienced defense counsel who did a terrific job handling a very difficult client who was extremely guilty.

### i. Claims Relating to His Guilt

Four of defendant's claims relate his guilt: (a) counsel should have argued he lacked fraudulent intent for § 1343 because he relied on advice of counsel, (b) counsel should have argued that he lacked fraudulent intent for § 1957 because he relied on advice of counsel, (c) counsel should have argued that because he caused no loss, defendant did not commit money laundering, and (e) counsel should have argued that there was no specified unlawful activity for money laundering. Dkt. 245 at 44–45. These claims are defaulted, and in any event, fail on the merits.

First, defendant procedurally defaulted these claims as they all relate directly to whether defendant should have pleaded guilty. Though ineffective assistance claims are not typically subject to procedural default, defendant asked for and was specifically given an opportunity by this Court to brief and argue ineffective assistance of counsel in connection with his guilty plea, and he did so on these precise grounds—claiming that Attorney Crudo was ineffective by not challenging the validity of the deeds of trust. This Court rejected those claims when defendant made them, finding that the validity of the deeds was not a defense, and then defendant did not appeal the denial of those claims. Because defendant could have raised these issues in his direct appeal and did not, these claims are procedurally

defaulted.

Second, these claims all fail on the merits. It was neither ineffective nor prejudicial for Attorney Crudo not to raise claims that this Court has since rejected and which, for the reasons discussed above, are entirely without merit. Defendant committed wire fraud and money laundering, and his attorney wisely advised him to plead guilty to avoid a trial in which his wire fraud and money laundering would have been laid bare for a jury, and which would have almost certainly resulted in a lengthier prison sentence. This was very effective, not ineffective, representation, sabotaged only by defendant's later attempts to withdraw his plea and failure to consistently accept responsibility for his offense.

ii. Claims Relating to His Sentencing

Defendant's two remaining ineffective assistance claims in the district court relate to his sentencing: (d) counsel should have argued that defendant caused no loss and thus did not owe restitution, and (f) counsel's unspecified failure caused the 18-level sentencing enhancement. Defendant cannot establish that Attorney Wine, who ably represented defendant at sentencing and made many real, coherent arguments based in actual law and fact—as opposed to defendant's frivolous claims about the deeds of trust—acted unreasonably or that defendant was prejudiced.

As an initial matter, Attorney Wine did argue at sentencing that there was some question as to the validity of the deeds. But he did not argue that this negated loss. Indeed, by the time defendant reached sentencing, this Court had already rejected defendant's arguments regarding the deeds of trust—and had found that the deeds were valid—so there would be no reason for defense counsel to repeat an argument this Court had rejected.

But in any event, as explained above, the validity of the deeds has no bearing on loss. Real people paid real money to defendant for homes through which defendant had fraudulently managed to hide the liens through a series of lies and fraudulent acts. This was actual loss. Defendant also tried to sell the third home for real money to real people. This was intended loss. Whether the liens were valid does not affect whether defendant defrauded his victims out of money based on false representations. Defense counsel correctly recognized this fact, and instead made much more meaningful, and plausible, arguments regarding the loss calculation.

The same is true for restitution. Whatever state of the world defendant's wishes existed with

regards to the liens, real people lost real money from his fraud scheme. Under the restitution statutes, he owed them restitution—and, in fact, he stipulated to that restitution amount following his sentencing hearing. Attorney Wine was not ineffective in deciding not to frivolously contest sentencing based on defendant's imaginary view of the world.

### 2. Claims of Ineffective Assistance by Appellate Counsel

Defendant asserts ineffective assistance by his appellate counsel, Eugene Vorobyov, based on the same six claims for trial counsel, contending his appellate counsel should have made these arguments on appeal. First, defendant waived his right to appeal his conviction and sentence in his plea agreement. Dkt. 136 at 4. The Ninth Circuit found that defendant's waiver of his right to appeal included the appeal from a denial of a motion to withdraw, and therefore dismissed his appeal. Dkt. 236. Since the Ninth Circuit dismissed defendant's appeal as barred by the plea agreement, defendant was never entitled to any appeal at all—and it was not, and could not, have been ineffective for Attorney Vorobyov not to make these claims on appeal.

Second, they also all fail on the merits for the same reasons defendant is not actually innocence of fraud and his district court lawyers were not ineffective—they are bad arguments that were rejected by this Court already on the merits, or would have been rejected had they been made. Even if there were any merits in these arguments, Attorney Vorobyov competently appealed this Court's determination that defendant's plea had been voluntary, focusing on the only plausible argument to get defendant out of his conviction. He wrote a lengthy, sophisticated brief, making much better arguments than those which defendant makes now. He was not ineffective.

## IV.  CONCLUSION

The defendant's § 2255 motion should be dismissed and/or denied with prejudice.

DATED: July 30, 2021                                          STEPHANIE M. HINDS
                                                             Acting United States Attorney


                                                             _____/s/_____
                                                             BENJAMIN KINGSLEY
                                                             Assistant United States Attorney